UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHIGAN BELL TELEPHONE
COMPANY d/b/a AT&T MICHIGAN,

      Plaintiff,

v.

                                              Case No. 09-12577

ORJIAKOR N. ISIOGU, Chairman,
                                         Honorable Patrick J. Duggan
MONICA MARTINEZ, Commissioner, and
STEVEN TRANSETH, Commissioner, in
their official capacities; SPRINT
COMMUNICATIONS COMPANY, L.P.;
SPRINT SPECTRUM L.P.; and NEXTEL
WEST CORP.,

      Defendants.

_____/

## OPINION AND ORDER

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on March 2, 2010.

PRESENT:      THE HONORABLE PATRICK J. DUGGAN
                    U.S. DISTRICT COURT JUDGE

On July 1, 2009, Michigan Bell Telephone Company, doing business as AT&T

Michigan ("AT&T Michigan"), filed the present lawsuit seeking relief from a June 2, 2009,

Order by the Michigan Public Service Commission ("MPSC") that provides for the extension

of several interconnection agreements ("ICAs") between AT&T Michigan and Sprint

Communications Company, L.P., Sprint Spectrum, L.P., and Nextel West Corporation

(collectively "Sprint Nextel"). The complaint names Sprint Nextel and members of the

MPSC in their official capacities as defendants. Pursuant to this Court's scheduling order that dispositive motions be filed by November 1, 2009, AT&T Michigan filed an "Initial Brief" on October 30, 2009. The MPSC defendants and Sprint Nextel separately filed response briefs on December 1, 2009, and AT&T Michigan replied on December 11, 2009. Because all of the parties seek final judgment in their respective briefs, the Court is construing the filings as cross motions for summary judgment. Pursuant to Eastern District of Michigan Local Rule 7.1(e)(2), the Court dispensed with oral argument on February 1, 2010.

## I. Factual and Procedural Background

This case arises from failed negotiations between AT&T Michigan and Sprint Nextel to work out mutually agreeable ICAs pursuant to the Federal Telecommunications Act of 1996 ("1996 Act"), 47 U.S.C. § 151 *et seq.* In 2006 AT&T Michigan's indirect parent company, AT&T Inc. ("AT&T"), merged with BellSouth Corporation ("BellSouth"). To obtain approval of the merger from the Federal Communications Commission ("FCC"), AT&T and BellSouth made a number of commitments regarding the obligations of its subsidiary companies acting as incumbent local exchange carriers ("ILECs") to enter into ICAs with competitor companies. *In the Matter of AT&T Inc. & BellSouth Corp.*, 22 F.C.C.R. 5662, 5809-10 (2007). Two of those commitments provided:

> 1. The AT&T/BellSouth ILECs shall make available to any requesting telecommunications carrier any entire effective interconnection agreement, whether negotiated or arbitrated, that an AT&T/BellSouth ILEC entered into in any state in the AT&T/BellSouth 22-state ILEC operating territory, subject to state-specific pricing and performance plans and technical feasibility, and provided, further, that an AT&T/BellSouth ILEC shall not be obligated to provide pursuant to this commitment any interconnection

arrangement or UNE unless it is feasible to provide, given the technical, network, and OSS attributes and limitations in, and is consistent with the laws and regulatory requirements of, the state for which the request is made.

. . . .

4. The AT&T/BellSouth ILECs shall permit a requesting telecommunications carrier to extend its current interconnection agreement, regardless of whether its initial term has expired, for a period of up to three years, subject to amendment to reflect prior and future changes of law.

*Id.* Those commitments are referred to as merger commitments 7.1 and 7.4, respectively.

In December 2007, Sprint Nextel sought to take advantage of merger commitment 7.1 by porting an agreement between AT&T and Sprint affiliates in Kentucky into Michigan. When AT&T Michigan resisted those efforts, Sprint Nextel filed a complaint with the MPSC on December 21, 2007, seeking enforcement of the commitment. AT&T Michigan responded with a motion to dismiss for lack of subject matter jurisdiction. On August 12, 2008, the MPSC granted AT&T Michigan's motion, explaining:

> The Commission concludes that it has no jurisdiction to adjudicate an action based on a claim of violation of an FCC order such as the Merger Order or its commitments. . . . However, that does not leave Sprint without a forum for obtaining what it says it desires. If it desires to import the interconnection agreement entered into between an affiliate of AT&T Michigan and Sprint, it may petition the Commission for arbitration of terms of an interconnection agreement under the provisions of 47 USC 252. . . . Sprint may seek to import the contract, and argue that failure to permit it to adopt the provisions is contrary to FCC orders or federal law.
> . . .
> It is unfortunate that Sprint chose to file a complaint rather than a petition for arbitration. Had it done the latter, it would likely be well on its way toward resolution of the issues.

*In the Matter of the Complaint of Sprint Commc'ns Co L.P.*, No. U-15491, 2008 Mich. PSC LEXIS 177, at *21-22 (MPSC Aug. 12, 2008).

Taking the cue from the MPSC, Sprint Nextel initiated negotiations with AT&T Michigan on August 18, 2008, to port the Kentucky ICA pursuant to 47 U.S.C. § 251. Not able to reach an agreement with the Kentucky ICA as a foundation, Sprint Nextel indicated in a January 15, 2009, letter that, rather than port the Kentucky ICA, it would like to extend existing ICAs between Sprint Nextel and AT&T Michigan as provided for by merger commitment 7.4. (MPSC Resp. Brief Ex. 2.) Sprint Nextel further indicated that, if AT&T Michigan refused the extensions, it would file a petition for arbitration with the MPSC on the matter. (*Id.*) In the two weeks that followed that letter, AT&T Michigan twice responded to Sprint Nextel's request indicating that (1) it is not required to and would not negotiate undertakings made in the merger commitments, and (2) it was no longer accepting extension requests on the existing Michigan ICAs. (*Id.* Exs. 3-4.)

True to its word, Sprint Nextel filed a petition for arbitration with the MPSC pursuant to 47 U.S.C. § 252 on February 6, 2009, submitting extension of the existing Michigan ICAs as the sole open issue for arbitration.[1] AT&T Michigan primarily responded with a motion to dismiss, again arguing that the MPSC lacked jurisdiction over the dispute. In the alternative, AT&T Michigan submitted an answer to the petition asserting 23 other open issues regarding the terms of the ICAs should the MPSC conclude that it had authority to arbitrate.

On April 22, 2009, an MPSC arbitration panel issued a decision suggesting that AT&T

---

[1]The 1996 Act defines an "arbitration window" during which parties may seek arbitration of failed ICA negotiations with state commissions. *See* 47 U.S.C. § 252(b)(1). Although the statutorily defined arbitration window was to expire at the end of January in this case, the parties had previously agreed to extend the deadline for arbitration petitions to February 8, 2009.

Michigan's motion to dismiss be denied and recommending that Sprint Nextel be permitted to extend its existing ICAs pursuant to merger commitment 7.4. (MPSC Resp. Brief Ex. 5 at 6-11.) The arbitration panel further recommended that, pursuant to the terms of merger commitment 7.4, AT&T Michigan's attempts to amend the ICAs in regard to the 23 other issues be rejected, except insofar as Sprint Nextel voluntarily agreed to adopt the amendments. (*Id.* Ex. 5 at 14.) On June 2, 2009, the MPSC denied AT&T Michigan's motion to dismiss and adopted the decision of the arbitration panel. (*Id.* Ex. 6.) AT&T Michigan initiated this lawsuit shortly thereafter.

## II. Standard of Review

When a party is aggrieved by a state commission decision under the 1996 Act, that party may seek review in federal district court. 47 U.S.C. § 252(e)(6). This Court's review is limited to a determination of whether the MPSC order complies with the provisions of the 1996 Act. *Mich. Bell Tel. Co. v. Strand*, 305 F.3d 580, 586 (6th Cir. 2002). In making this determination, the Court reviews the MPSC's interpretation of the 1996 Act *de novo*. *Id.*

In regard to the motions presently before the Court, summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). The parties in this case agree that there are no genuine issues of fact and present a solely legal issue as to whether the MPSC had authority to issue the June 2, 2009, Order.

## III. The 1996 Federal Telecommunications Act and MPSC Jurisdiction

The 1996 Act under which this lawsuit arises attempts "[t]o facilitate competition in the traditionally monopolized local telephone service market." *Mich. Bell Tel. Co. v. Strand*,

305 F.3d at 582. To this end the 1996 Act "requires all telecommunications carriers to interconnect their networks so that customers of different carriers can call one another." *Mich. Bell Tel. Co. v. MFS Intelenet of Mich., Inc.*, 339 F.3d 428, 430 (6th Cir. 2003). Therefore, ILECs who own local telephone networks "must provide network access to competing local exchange carriers ["CLECs"] . . . and all local exchange carriers must 'establish reciprocal compensation arrangements for the transport and termination of telecommunications.'" *Id.* at 430-31 (quoting 47 U.S.C. § 251(b)(5)). The 1996 Act goes on to provide specific procedures by which local exchange carriers shall endeavor to establish such agreements.

As is relevant to the present action, the 1996 Act first requires that the parties attempt to reach an agreement through voluntary negotiation. *Id.* at 431; *see also* 47 U.S.C. §§ 251(c)(1), 252(a)(1). Upon request by a CLEC, an ILEC has a duty to negotiate in good faith the terms and conditions of agreements necessary to fulfill five enumerated duties in the 1996 Act. 47 U.S.C. § 251(c)(1). At that time, the ILEC "may negotiate and enter into a binding agreement with the requesting [CLEC] without regard to the standards set forth in subsections (b) and (c) of section 251 of [the 1996 Act]." 47 U.S.C. § 252(a)(1). "However, if no agreement is reached or if no negotiations commence within 135 days after the competitor makes its initial request to enter into voluntary negotiations, the [CLEC] can petition the state commission to arbitrate 'any open issues' so long as the petition is made within 160 days of the initial request." *Verizon North Inc. v. Strand*, 367 F.3d 577, 582 (6th Cir. 2004) (summarizing 47 U.S.C. § 252(b)). The state commission then has nine months within which to resolve the issues submitted for arbitration pursuant to standards set forth in

6

the 1996 Act. 47 U.S.C. § 252(b)-(d). Once an ICA is adopted through negotiation or arbitration, it must be submitted for approval by the state commission whose review is again regulated by standards set forth in the 1996 Act. 47 U.S.C. § 252(e).

In the present case, Sprint Nextel invoked the compulsory arbitration process after failing to negotiate mutually agreeable ICAs with AT&T Michigan. In its arbitration petition, Sprint Nextel presented extension of the existing Michigan ICAs pursuant to merger commitment 7.4 in the AT&T/BellSouth merger order as the only open issue for arbitration. The MPSC took up that issue and found in Sprint Nextel's favor. In this Court, AT&T Michigan argues that the MPSC lacks authority to resolve the issue submitted by Sprint Nextel. AT&T Michigan's claim devolves into two separate arguments: (1) that extension of the existing Michigan ICAs was not an "open issue" subject to arbitration with the MPSC, and (2) that the MPSC has no authority to enforce merger commitments in FCC orders. The Court addresses each argument in turn.

## A. ICA Negotiations and Open Issues for Arbitration

As an initial matter, AT&T Michigan argues that the issue presented by Sprint Nextel to the MPSC—extension of the Michigan ICAs—was not an "open issue" subject to arbitration. Specifically, AT&T Michigan maintains that Sprint Nextel effectively abandoned on-going negotiations in January 2009 when it decided that it no longer wanted to port the Kentucky ICA but would rather extend the Michigan ICAs. AT&T Michigan specifically refused to negotiate Sprint Nextel's new position stating that it considered the request "to be separate and apart from the parties' ongoing negotiations" and expressing its view that it has no duty to negotiate "merger commitment undertakings" under the 1996 Act.

7

(MPSC Resp. Brief Ex. 3.)  As to this latter point, the 1996 Act requires AT&T Michigan to negotiate so as to fulfill its duties in regard to resale, number portability, dialing parity, access to rights-of-way, and reciprocal compensation but makes no specific mention of merger commitment obligations. 47 U.S.C. § 251(b)(1)-(5), (c)(1).  Having refused to negotiate extensions of the Michigan ICAs, AT&T Michigan asserts that the topic could not be an open issue for arbitration.

Sprint Nextel and the MPSC (collectively "defendants") present a two-fold opposition to AT&T Michigan's argument.  First, the defendants argue that AT&T Michigan is not permitted under the 1996 Act to avoid compulsory arbitration by refusing to negotiate to prevent the creation of "open" issues.  In support of this position, the defendants rely on the 1996 Act's requirement that ILECs engage in good faith negotiations regarding the *terms and conditions* of ICAs to fulfill their aforementioned obligations.  47 U.S.C. § 251(c)(1).  This leads to the defendants' second argument; the defendants contend that extension of the Michigan ICAs involved negotiation of an essential term, namely the duration of any negotiated agreement.  To the extent that AT&T Michigan and Sprint Nextel negotiated at all, the defendants contend that duration must have been an open issue as an essential term of any ICA.

AT&T Michigan objects to the defendants characterization of the issues pending at negotiation.  By extending the existing Michigan ICAs, Sprint Nextel did not merely seek to define the duration of a negotiated ICA; rather, Sprint Nextel sought the benefit of all the terms and conditions of the existing ICAs for an additional three years.  AT&T Michigan had not agreed to all those terms and conditions during the course of the negotiations.  In further

support of its position, AT&T Michigan relies on a Fifth Circuit case that held the only issues open for arbitration are those "that were the subject of voluntary negotiations" and that "[a]n ILEC is clearly free to refuse to negotiate any issues other than those it has a duty to negotiate under the Act . . . ." *Coserv L.L.C. v. Sw. Bell Tel. Co.*, 350 F.3d 482, 487, 488 (5th Cir. 2003).

Although the Court agrees that extension of the Michigan ICAs put in issue contract terms beyond the mere duration of the ICAs, the Court declines to adopt the limited view of the scope of the negotiations proffered by AT&T Michigan. Unlike the ILEC in the Fifth Circuit case which made its refusal to negotiate beyond the strict requirements of the 1996 Act clear from the start, *see Coserv*, 350 F.3d at 486, AT&T Michigan engaged in negotiations regarding all terms and conditions of the Kentucky ICA that Sprint Nextel initially sought to port to Michigan pursuant to merger commitment 7.1. In those negotiations, there is no indication that AT&T Michigan sought to limit discussion to the requirements of the 1996 Act or to exclude consideration of obligations arising under merger commitments. When negotiations regarding the Kentucky ICA proved unfruitful and Sprint Nextel sought extension of the Michigan ICAs as an alternative, AT&T Michigan was not free to unilaterally terminate the pending negotiations.

The Sixth Circuit has described the 1996 Act as allowing CLECs to initiate arbitration "if no agreement is reached or if *no negotiations commence* within 135 days after the competitor makes its initial request to enter into voluntary negotiations." *Verizon North Inc. v. Strand*, 367 F.3d at 582 (emphasis added). In this case, the parties negotiated from the time of Sprint Nextel's initial request through to the arbitration window. Although Sprint

Nextel's final request came at a late stage of the negotiations, there is no reason to require that the parties start negotiations anew. It is to be expected that parties will change their positions through the course of negotiations, otherwise "negotiations" serve no purpose. Under these circumstances and given AT&T Michigan's explicit refusal to engage in further negotiations, it was appropriate for Sprint Nextel to initiate arbitration, raising extension of the Michigan ICAs as an open issue.

**B. MPSC Consideration of FCC Merger Commitments**

AT&T Michigan's next argument is that the MPSC lacks authority to interpret and enforce FCC merger commitments through arbitration proceedings brought under the 1996 Act. AT&T Michigan specifically argues that, because the 1996 Act does not impose a duty on ILECs to extend existing ICAs, the MPSC has no authority to determine whether such an obligation exists under an FCC merger commitment.

The MPSC's authority to arbitrate ICA disputes is specifically limited not just to the 1996 Act, but to certain sections thereof. *See* 47 U.S.C. § 252(c). Although the scope of arbitrable issues may be somewhat expanded by the breadth of topics included in negotiations related to § 251 of the 1996 Act, *see Coserv*, 350 F.3d at 487 ("[W]here the parties have voluntarily included in negotiations issues other than those duties required of an ILEC by § 251(b) and (c), those issues are subject to compulsory arbitration under § 252(b)(1)."), some topics governed by the 1996 Act remain out of the reach of state commissions even if the parties engage in such negotiations. Specifically, negotiations regarding § 271 of the act, related to the provision of long-distance services by Bell operating companies, are not arbitrable in state commissions even if the parties ultimately fail to reach

10

an agreement. *Mich. Bell Tel. Co. v. Lark*, No. 06-11982, 2007 WL 2868633, at *5 (E.D.

Mich. Sept. 26, 2007) ("In sharp contrast to the shared federal and state authority for local

telephone markets, . . . . [a]pproval for the Bell operating companies to provide long distance

service under Section 271 is expressly granted by the FCC—not the state utility

commision."); *see also Qwest Corp. v. Ariz. Corp. Comm'n*, 567 F.3d 1109, 1112 (9th Cir.

2009) ("[S]tate commissions may not impose Section 271 access or pricing requirements in

the course of arbitrating interconnection agreements."). AT&T Michigan argues that, if the

state commissions lack authority to arbitrate all issues arising under the 1996 Act, they

certainly lack authority to arbitrate merger commitment issues arising in FCC orders wholly

independent of the 1996 Act.

While AT&T Michigan's reasoning is appealing on first glance, the merger

commitment invoked by Sprint Nextel and the MPSC's arbitral authority are not as

conceptually distinct as AT&T Michigan's argument makes them appear. Merger

commitment 7.4 does not address issues and topics separate and apart from those subject to

arbitration under the 1996 Act; to the contrary, it directly impacts the obligations of AT&T

subsidiaries to enter into specific ICAs previously negotiated under § 251 of the 1996 Act.

Alongside the merger commitments, the FCC AT&T/BellSouth merger order states:

> It is not the intent of these commitments to restrict, supersede, or otherwise
> alter state or local jurisdiction under the Communications Act of 1934, as
> amended, or over the matters addressed in these commitments, or to limit
> state authority to adopt rules, regulations, performance monitoring
> programs, or other policies that are not inconsistent with these
> commitments.

22 F.C.C.R. at 5807. Although AT&T Michigan correctly notes that this "savings clause"

does nothing to expand the MPSC's authority, it does make clear that, to the extent arbitral

issues and the merger commitments overlap, the MPSC retains authority to resolve those

issues.

Nonetheless, AT&T Michigan objects that the MPSC made no attempt to limit its

actions or honor its duties as authorized by the 1996 Act; rather AT&T Michigan contends

that the MPSC proceeded purely as enforcer of the merger commitment, even to the extent

that the merger commitment imposed obligations not strictly required by § 251 of the 1996

Act. Again, however, AT&T Michigan's argument oversimplifies the situation and ignores

practical realities. In exercising its authority over arbitrable issues, the MPSC is required to

act consistent with "all federal telecommunications laws, rules, orders and regulations."

Mich. Comp. Laws. Ann. § 484.2201(2); *see also Mich. Bell Tel. Co. v. Strand*, 305 F.3d at

587-90 (analyzing the consistency of the MPSC's actions with FCC orders). Once Sprint

Nextel invoked merger commitment 7.4, the MPSC could not properly execute its arbitration

obligations under the 1996 Act without enforcing the merger commitment. Furthermore,

while the terms and conditions of the extended ICAs may go beyond the minimal

requirements of § 251 of the 1996 Act, those terms and conditions were placed in issue when

Sprint Nextel requested extension of the ICAs, making them open issues for resolution by

the MPSC during arbitration.[2] The MPSC's conclusion that the merger commitment barred

AT&T Michigan's attempts to amend these additional terms and conditions does nothing to

---

[2]There is no indication in the record that the additional terms and conditions involved
issues specifically exempted from MPSC authority such as matters arising under § 271 of the
1996 Act.

indicate that the MPSC exceeded its arbitral authority.[3]

The Court agrees with AT&T Michigan's position that Sprint Nextel could have sought enforcement of merger commitment 7.4 by filing with the FCC rather than by filing an arbitration petition with the MPSC. *See In the Matter of AT&T Inc. & BellSouth Corp.*, 22 F.C.C.R. at 5807 ("For the avoidance of doubt, unless otherwise expressly stated to the contrary, all conditions and commitments proposed in this letter are enforceable by the FCC . . . ."). Nonetheless, once Sprint Nextel invoked the MPSC's jurisdiction under the 1996 Act, the MPSC was obligated to resolve the issues before it in conformity with federal law. That such action ultimately required enforcement of merger commitment 7.4 does nothing to render the MPSC's authority invalid in the first instance.

Accordingly,

**IT IS ORDERED** that AT&T Michigan's motion for summary judgment is **DENIED**.

**IT IS FURTHER ORDERED** that the motions for summary judgment by the MPSC and Sprint Nextel are **GRANTED**. AT&T Michigan's complaint is **DISMISSED WITH PREJUDICE**.

A judgment consistent with this order shall enter.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
William J. Champion, III, Esq.
Spencer A. Sattler, Esq.
Haran C. Rashes, Esq.

---

[3]Indeed, had the MPSC allowed AT&T Michigan's amendments in contravention of the merger commitment, the MPSC would have violated its obligation to exercise its jurisdiction consistent with all federal telecommunications laws, rules, orders, and regulations.

Joseph C. Cavender, Esq.
Roderick S. Coy, Esq.
Thomas E. Maier, Esq.